Thomas J. WHELAN and Thomas M. Flaherty, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. 76–2220, Cr. 567–70.

United States District Court, D. New Jersey.

March 3, 1977.

**380**

Ernest Allen Cohen, Hackensack, N.J. (Greenspan & Aurnou, White Plains, N.Y., Leon J. Greenspan, appearing, White Plains, N.Y.), for plaintiffs.

Jonathan L. Goldstein, U. S. Atty., by John J. Barry, Chief, Appeals Div., Newark, N.J., for defendant.

## OPINION

BIUNNO, District Judge.

This is the second application made by Whelan and Flaherty seeking release under 28 U.S.C. § 2255 or, in the alternative, for resentencing under 18 U.S.C. § 4208 (now 4205). A summary of the prior proceedings is appended to this opinion for convenience.

An analysis of the evidence adduced against them and their co-defendants in the conspiracy/extortion trial (Cr. 570–70) is fully set forth in *U.S. v. Kenny*, 462 F.2d 1205 (CA–3, 1972).

Suffice it to say here that the evidence established the existence of a deliberate, thoroughly organized and fully executed scheme and practice, on the part of public officials, to extort money from persons doing business with the City of Jersey City and the County of Hudson, with arrangements to share the loot among the participants.

Among other items, the evidence showed cash totalling $700,000 being used to buy bearer bonds for John V. Kenny, with the assistance of one Sternkopf (who was supposed to be the independent city auditor) to conceal the source of the money and the ownership of the bonds. It showed that Whelan and Flaherty arranged to open "numbered" bank accounts in a Florida bank, in which cash and bearer bonds totalling more than $1.2 million was deposited to their credit. See, for example, "The J. V. Kenny Bonds", discussed at 462 F.2d pp. 1219 to 1220, and "The Whelan and Flaherty Accounts", discussed at 462 F.2d pp. 1220 to 1221, including the fact that 4 checks totalling more than $84,000 had not been negotiated as of June 22, 1971.

■ No serious argument can be made that the 15 year jail sentences were unduly harsh, or even that they are not proper sentences. No claim can be advanced that Whelan and Flaherty were "Robin Hoods", taking from the rich to aid the poor. On the contrary, since the extorted funds could only come from the public treasury, what they did was to rob the poor to enrich themselves and their cohorts. Judge Shaw fully appreciated this and made explicit reference to it at sentence time.

■ For the most part, what is argued now is a rehash of what was argued before Judge Shaw on the Rule 35 motion, and what was argued in the 1973 motion under 28 U.S.C. § 2255. Both motions were denied, and the denials were affirmed as not-

ed in the attached Summary. As provided in 28 U.S.C. § 2255, "The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner." The provision is a salutary one, and this court adheres to it.

■ The only point that is new is that the denial of parole by the Parole Commission is a frustration of Judge Shaw's intent when he imposed the 15 year sentences. This claim is grounded on *U.S. v. Salerno, Appeal of Silverman,* 538 F.2d 1005 (CA–3, 1976), *reh. den.* 542 F.2d 628 (CA–3, 1976). The issue so raised is whether this court, as a sentencing court, has any jurisdiction at all under 28 U.S.C. § 2255, or whether the only remedy available to the prisoner is by writ of habeas corpus under 28 U.S.C. § 2241, before the district court having jurisdiction over their place of incarceration, namely, the Middle District of Pennsylvania.

In that sense, the real issue is whether the Parole Commission's denial of parole was arbitrary and capricious. There is no doubt in this court's mind that the Commission's denial was affected, at least in part, by its concern that the wide public knowledge of the existence of the $1.2 million of loot withdrawn from the Florida bank, coupled with complete silence about its subsequent history, would preclude an affirmative finding that release on parole would not "depreciate the seriousness of his offense or promote disrespect for the law", 18 U.S.C. § 4206(a)(1), as added by Pub.L. 94–233, sec. 2.

The spectacle of Whelan and Flaherty being paroled and free to escape with their ill-gotten gains to some Costa Rican or other haven, to luxuriate in comfort, may have been more than the Parole Commission could stomach. But that question, if it has substance, is for a proceeding under 28 U.S.C. § 2241 in the Middle District of Pennsylvania. This court lacks jurisdiction to decide it. If it could, it would find the action of the Parole Commission proper, since the spectacle is revolting.[1]

The *Silverman* case has no application here. It involved what was obviously intended to be a "light" sentence of 3 years, imposed under 18 U.S.C. § 4208(a)(2) [now 4205(b)(2)]. The parole guidelines, adopted after sentence, reflected the retrospective, statistical distribution on a Gaussian curve of the range of time in jail for that offense. The question would have better been decided as a review of parole action under 28 U.S.C. § 2241, but the consequences of the new guidelines were so much in contrast to the sentence imposed, in light of the explicit statement of the sentencing judge, that the Court of Appeals was moved to bring the issue within 28 U.S.C. § 2255. It made clear, however, that the circumstances of the case were unique, and that the decision did not establish the sentencing court as a super parole board.

Whatever the soundness of *Silverman* and like decisions may be, no basis for enlarging this court's jurisdiction is shown. The guidelines in these cases show no more than that thieving public officials in the past probably have gotten off too lightly. Judge Shaw's sentencing statements, and his denial of the Rule 35 motion, show that he had no intention of continuing that practice. The "way of life" which was reflected in the evidence was rotten to the core, and Judge Shaw clearly intended, by his sentences, to try to bring it to an end.[2]

---

1. At the hearing of January 10, 1977, counsel presented some argument based on statements made on questions asked at the parole hearing. These could not be considered without a transcript, and arrangements were made to secure the sound recording tapes, from which counsel has prepared a partial transcript. After this had come in, the court asked both sides whether any further argument or submission was desired in light of the added material. Both sides have independently informed the court that they rest on the argument and submissions already made.

2. Even if there were jurisdiction here, and even if this court were inclined to "release Whelan and Flaherty now" (which it is not), a resentencing now would inevitably frustrate Judge Shaw's intent on sentencing. A resentencing to "time served", for example, would release them free of parole supervision for the remainder of the 15 years, and thus deprive the parole

This court is satisfied, from a detailed review of the materials, that Judge Shaw would have experienced no sense of frustration at all from the denial of parole. At the time of sentencing, Whelan and Flaherty had to serve one-third of the 15 year sentences before being *eligible* to apply. Under that law, given full credit for "good time" allowances, they would not be entitled of right to be paroled until they had served somewhat more than 75% of their sentences. Under the 1976 amendments, they must be released on parole after serving ⅔ of their sentences, absent certain affirmative findings, 18 U.S.C. § 4206(d), as added by P.L. 94–233, sec. 2.

█ Being eligible, of course, merely allows the application to be made, but the grant of parole is a different matter which, as this court noted in its earlier ruling, is a matter placed by the Congress in the hands of the parole commission, where it belongs.

This is not a case which resembles *Silverman,* or like cases, where a unique aspect or narrow circumstances leads to a frustration of the intention of the sentencing judge. As the Court of Appeals observed, the sentences imposed on the various defendants in this case recognized the varying levels of participation in the conspiracy. See 462 F.2d 1218, footnote 7, and the array of sentences listed in 462 F.2d 1210, footnote 1. The range runs from the straight 15 year sentences imposed on three participants, down to a probationary sentence. In no instance did Judge Shaw employ the options under former 18 U.S.C. § 4208(a)(1) or (a)(2) [now 4205(b)(1) and (b)(2)], and nothing presented or reviewed carries the slightest suggestion that a denial of parole on the

first eligible application embodies any frustration of his intent.[3]

The presentation made here is also eloquent by its silence. Great emphasis is placed on the fact that Judge Shaw regarded the decision to withdraw the appeals and to plead guilty to the income tax charges as indicating that the first step had been taken on the long road to earning a return to society. He gave weight to that when he imposed a concurrent 5 year sentence, which has already run out, and imposed a fine of $10,000, which has not been paid. There is not another word of other steps taken on the long road.

The convictions are final, and the statute of limitations has doubtless run on other wrongdoings, if there were any. Yet Whelan and Flaherty evidently feel bound by the code of silence which is commonly part of an organized criminal conspiracy like this, not only about their $1.2 million of loot but also about the inside details, the workings and machinery, by which the conspiracy was carried out. A baring of these details might impress a parole commission that the change of attitude has passed beyond the first step, but there is only silence.

The court accordingly finds that none of the criteria specified by 28 U.S.C. § 2255 for the granting of relief thereunder appear to exist, and there is no ground for release, or for vacating, modifying or correcting the sentences imposed.

### APPENDIX

*SUMMARY OF EARLIER PROCEEDINGS*

*U.S. v. Whelan and Flaherty*

Appeals, Third Circuit, No. 76–2009, emphasizing that the scope of *Silverman* will not be relaxed or departed from, and that it is to be limited to cases where sentence is imposed under 18 U.S.C. 4208(a)(2) [now 4205(b)(2)], and where the intention at sentence time is later thwarted by the guidelines. Other reasons for dissatisfaction with the parole commissions action are not a basis for the invoking of Silverman. See, especially, III, of that opinion.

---

commission of the means to impose such conditions on parole as the cases call for under 18 U.S.C. § 4209 [1976].

The only suitable mechanism that appears to exist for this case is that set forth by 18 U.S.C. § 4205(g) [1976], under which the Bureau of Prisons may move the sentencing court to reduce the *minimum* term to the time the defendant has served. There has been no such motion by the Bureau, and hence no jurisdiction under that provision.

**3.** And see *U.S. v. Somers (Ponzio, Appellee),* decided February 27, 1977 by the Court of

(Conspiracy and extortion, Cr. 567–70)

(Income tax evasion, Cr. 568–70; 570–70)

August 10, 1971. Whelan and Flaherty sentenced on verdict of guilty on 2 counts of conspiracy and 27 counts of extortion. General sentence of 15 years imposed by Judge Shaw. Bail pending appeal set at $400,000.

December 6, 1971. Whelan and Flaherty retracted pleas of not guilty and entered pleas of guilty on the separate income tax evasion indictments. Appeals from convictions in Crim. 567–70 withdrawn.

February 17, 1972. Whelan and Flaherty sentenced on pleas of guilty on income tax indictments. General sentence of 5 years and $10,000 fine imposed on each by Judge Shaw, term sentences to be concurrent with 15 year terms on conspiracy and extortion convictions.

May 16, 1972. Motions of Whelan and Flaherty for reduction of 15 year sentences in Crim. 570–70, pursuant to F.R.Crim.P. 35, denied by Judge Shaw.

December 8, 1972. Denials of Rule 35 applications by Judge Shaw affirmed by Court of Appeals. CA # 72–1588 and 1589.

December 12, 1973. Applications of Whelan and Flaherty for reduction of their 15 year sentences, under 28 U.S.C. § 2255 or, in the alternative, for resentencing under 18 U.S.C. § 4208, denied by Judge Biunno.

September 11, 1974. Judgment of Judge Biunno denying relief affirmed by Court of Appeals, CA # 74–1127.

June 3, 1976. Hearing held at Lewisburgh on applications for parole.

July 12, 1976. Parole applications denied.

October 18, 1976. Hearing held on appeal before National Appellate Board. Appeals denied.

November 22, 1976. Motion filed in U.S. District Court, Civ. 76–2220, for release of Whelan and Flaherty from custody under 28 U.S.C. § 2255, or in the alter-

native to modify or alter the sentences under 18 U.S.C. § 4208 (now sec. 4205).

January 10, 1977. Hearing held on motion. Decision reserved pending receipt of transcript of hearing of October 18, 1976 before National Appellate Board.

February 4, 1977. Partial transcript of October 18, 1977 hearing received.