UNITED STATES of America

v.

Edward Elmer SOLLY, Charles Joseph Smith, James Carl Bates.

Appeal of Charles J. SMITH.

No. 75–2236.

United States Court of Appeals, Third Circuit.

Resubmitted under Third Circuit Rule 12(6) June 17, 1977.

Decided July 6, 1977.

Charles J. Smith, pro se.

Judith M. Mears, Supervising Atty., Yale Legal Services Organization, New Haven, Conn., for appellant, Charles J. Smith; Joseph S. Genova, Yale Law School, on brief.

Jonathan L. Goldstein, U. S. Atty., Maryanne T. Desmond, John J. Barry, Asst. U. S. Attys., Newark, N. J., for appellee, United States of America.

Before SEITZ, Chief Judge, and ALDISERT and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

Appellant, Charles J. Smith, was sentenced to a term of nine months to four years pursuant to 18 U.S.C. § 4208(a)(1)[1] on April 17, 1975. Smith timely filed a Rule 35 Motion for Reduction of Sentence in which he contended that the district court's sentencing expectations were frustrated by a misconception concerning the applicability and operation of the Parole policy guidelines which were then in effect. 39 Fed. Reg. 20028 (1974) now codified as amended in 28 C.F.R. § 2.20 (1976). The sentencing judge denied the motion and the appeal is taken from that denial.[2] In *United States v. Salerno (Appeal of Silverman)*, 538 F.2d 1005 (3d Cir.), *per curiam sur petition for reh.*, 542 F.2d 628 (1976), we granted a motion under § 2255 to vacate a sentence imposed pursuant to 18 U.S.C. § 4208(a)(2) because the sentencing judge's expectations were frustrated by implementation of the guidelines adopted after the sentence drastically altering the criteria for parole. We indicated that because the sentencing judge labored under a misapprehension of the parole consequences of the sentence which he imposed, the defendant should be resentenced to effectuate the judge's sentencing goals. See also *United States v. Somers (Appeal of Ponzio)*, 552 F.2d 108 (3d Cir. 1976).

The transcript of the sentencing in this case reveals in detail the sentencing goals of the district court. The court thought it important to return defendant to his job as soon as possible for the sake of his wife and five children but determined that the interests of defendant, his family and society would be served best by a sufficiently long period of institutional care to permit defendant to overcome his drug addiction. The court stated:

> [I]t is adjudged that the defendant be committed to the custody of the Attorney General of the United States, or his authorized representative, for imprisonment for a term of four years and that the defendant shall become eligible for parole, however, under Title 18 U.S. Code, Section 4208(a)(1) upon serving a term of nine months. It is recommended that he be afforded an institutional program with a drug abuse setting, for it is the hope that the institutional facilities and capabilities to which the defendant will be referred will be productive for his own benefit, and ultimately for his family's and his community. This is the particular purpose that prompts this sentence. (Transcript of sentencing at 7).

Moreover, shortly thereafter, in a letter to defendant on May 2, 1975, the sentencing judge said:

> I can assure you that it was not the desire of this Court to punish you and that the Court was not insensitive to the hardships your confinement would impose upon your family, but rather the sentence represented a hard decision by the Court that the ultimate long-range benefit to your family might best be served by a short period of confinement, during which you might hopefully be permanent-

1. Act of August 25, 1958, Pub. L. No. 85–752, § 3, 72 Stat. 845–46. Effective July 14, 1976 the codification of § 3 was changed without change in language to 18 U.S.C. § 4205(b)(1). We will refer to it as 4208(a)(1) as it was codified at the time of the order from which the appeal is taken.

2. The extraordinary amount of time needed to reach the merits of this case is attributable to the regrettable need for two prior opinions and two remands occasioned by problems concerning the timeliness of the appeals. For a more detailed explanation of those problems, see *United States v. Solly*, 545 F.2d 874 (3d Cir. 1976).

ly relieved of your drug dependency so that you might return to them as a functional and effective husband and father. (App. at 1).

On August 15, 1975, less than 120 days after the imposition of sentence, defendant's Rule 35 motion advised the sentencing judge that due to the operation of the guidelines, he would not receive serious consideration for parole until a point much later than the nine months envisioned by the court. The judge responded saying that he would withhold ruling until he received a response to his request for "confirmation of the assertions in the defendant's supporting affidavit suggesting his model behavior and the suggestion that the drug therapy for which he was principally sentenced to Danbury has been successful to the point that the institution authorities would support his release or a substantial reduction of sentence." The judge also said that he could not join in conjecture about whether the Board of Parole would seriously consider defendant for parole after nine months. Finally, on September 23, 1975, the district court explained its order denying the motion in a letter to defendant's legal advisor, saying:

> Unlike the cases cited in support of this motion, this Court did not impose an 18 U.S.C. § 4208(a)(2) sentence and certainly was not ignorant of the recently established parole decision making guidelines, 28 C.F.R. 32.20 (1974). Aware of parole boards' utilization of these guidelines in exercising the indeterminate sentencing authority given to them by sentencing judges under 18 U.S.C. § 4208(a)(2), the Court eliminated it as a sentencing alternative in this case. In fact, the Court *itself* established an early parole eligibility date.

> There is evidence from the responses to the Court's inquiries that Mr. Smith will probably not complete his current drug rehabilitation program until February,

1976, at which time, barring new developments, he will be seriously considered for parole. Should this disposition occur, it would not be inconsistent with the Court's intentions in its imposition of sentence under 18 U.S.C. § 4208(a)(1). (App. at 32) (emphasis in original).

From the transcript of the sentencing two points clearly emerge which are echoed by the letters. The sentencing judge desired that defendant receive serious parole consideration upon satisfactory completion of a drug rehabilitation program. He believed that the parole authorities would render such consideration after nine months.

Prior to the adoption of the guidelines such a belief would have been justified, but it is no longer. As we indicated in *Silverman*, judicial determinations of the percentage of parole decisions made within the guidelines have ranged between 88 and 94%. Positive institutional performance is the sine qua non for parole release but usually does not justify a decision outside of the guidelines. The guideline system is equally applicable to sentences under §§ 4208(a)(1) and 4208(a)(2). Thus, the district court labored under a serious misapprehension of fact in thinking that it had secured an early date for serious parole consideration for defendant through its sentence. The parole release guidelines based on defendant's salient factor score and offense severity rating call for a period of incarceration ranging from 26–32 months. The score and offense severity rating are calculated from the information contained in the presentence report. Had the judge been aware of their applicability he could have calculated them himself or asked the Probation Office to do so.[3] Because the judge was unaware of their import, he did not appreciate the actual parole consequences of his sentence. Thus, while the judge thought that, assuming successful

---

**3.** We, of course, recognize that the calculation of the guideline range made by the judge or Probation Office will not be binding on the Board of Parole and that the results may occasionally vary depending upon the particular offense severity rating assigned by the Board. Nevertheless, such a projection would be a highly accurate and useful indicator in most cases.

completion of a drug rehabilitation program, defendant would likely be paroled in 9 months, the guidelines almost insured a minimum period of incarceration of 26 months.

Although, these facts were predictable at the time of sentencing, it is useful to examine the actual course of parole release decisionmaking in this case. In denying defendant's Rule 35 motion, the judge relied on a report made to him at his request which indicated that defendant would complete his drug rehabilitation program in February 1976, at which time he would be seriously considered for parole. This is borne out by a formal report prepared by defendant's case manager on October 7, 1975. This report depicted defendant as having made unusually excellent progress in all respects, and recommended four additional months of treatment with an Institutional Review Hearing in February 1976. Nevertheless, 10 days later, on October 17, 1975, the Board of Parole continued defendant's case for an Institutional Review Hearing in April 1977—a point 26 months into defendant's sentence, and 18 months beyond the case manager's recommendation and the sentencing judge's expectation at the time the Rule 35 motion was denied. The reason for the action was that:

> Your offense behavior has been rated as high severity because there was more than one automobile stolen. You have a salient factor score of 5. You have been in custody a total of 7 months. Guidelines established by the board for adult cases which consider the above factors indicate a range of 26–32 months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, it is found that a decision at this consideration outside the guidelines does not appear warranted. You need additional institutional treatment, specifically continued involvement in drug therapy program to enhance your capacity to lead a law abiding life. (exhibit to appellant's brief at 20).

This case history is an illustration of the judgment which we made in *Silverman*, based on statistics in evidence in other courts, that the parole consequences of a sentence to which the guidelines are applicable can be predicted with a high degree of accuracy at the time of sentencing. It appears that neither the length of sentence, the specific parole eligibility date established by the judge, nor the judge's appraisal of the culpability of the defendant will influence the parole release decision. *See* Project, *Parole Release Decisionmaking in the Sentencing Process*, 84 Yale L.J. 810, 882–83 (1975).

It is appropriate in this case that the sentencing judge be given an opportunity to correct the sentence to effectuate his original sentencing goals as expressed at the time of sentencing in light of the parole implications which obtain under the guidelines applicable to a § 4208(a)(1) sentence.

In order to avoid the problem apparent in this case, at least one district court has directed its Probation Office to include in the presentence report a projection of the time of release under the guidelines. Project, 84 Yale L.J. 810, 878 n. 334 (1975). We think that the adoption of a similar practice merits the serious consideration of the district courts.

The order of the district court will be vacated and the matter remanded for proceedings consistent with this opinion.

The mandate shall issue forthwith.